# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION, *et al.* | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. |
| v. | § § | 1:19-cv-00946-RP |
| STEVEN MCCRAW, *et al.*, | § § | |
| Defendants. | § § | |

---

## PLAINTIFFS' OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

James A. Hemphill
Texas State Bar No. 00787674
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Ave., Suite 2700
Austin, Texas 78701
Tel: (512) 480-5762
Fax: (512) 536-9907
jhemphill@gdhm.com

Leah M. Nicholls (*pro hac vice*)
DC Bar No. 982730
Public Justice P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
Tel: (202) 797-8600
lnicholls@publicjustice.net

David A. Schulz (*pro hac vice*)
NY State Bar No. 1514751
Media Freedom and Information
     Access Clinic
Yale Law School
127 Wall Street
New Haven, CT 06511
Tel: (212) 850-6103
david.schulz@yale.edu

Mickey H. Osterreicher (*pro hac vice*)
New York State Bar No. 2938678
General Counsel
National Press Photographers Association
Finnerty Osterreicher & Abdulla
70 Niagara Street
Buffalo, NY 14202
Tel: (716) 983-7800
Fax: (716) 608-1509
lawyer@nppa.org

Alicia Wagner Calzada
Texas State Bar No. 24076296
Deputy General Counsel
National Press Photographers Association
Alicia Wagner Calzada, PLLC
12023 Radium, Suite B1
San Antonio, TX 78216
Tel: (210) 825-1449
Alicia@calzadalegal.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iv

INTRODUCTION .......................................................................................................... 1

ARGUMENT ................................................................................................................ 2

I.    CHAPTER 423'S RESTRICTIONS ARE SUBJECT TO, AND FAIL, STRICT
      SCRUTINY ......................................................................................................... 2

      A.    The Surveillance and No-Fly Provisions Restrict Speech and Expressive Conduct
            Protected by the First Amendment ............................................................. 2

      B.    Strict Scrutiny Applies Because Chapter 423 Imposes Speaker- and Content-
            Based Discrimination ................................................................................ 5

      C.    Chapter 423 Cannot Pass Strict Scrutiny ................................................... 6

            i.    *No compelling need* ........................................................................ 7

            ii.   *No narrow tailoring* ....................................................................... 8

      D.    Even Under Intermediate Scrutiny, the Provisions Are Unconstitutional .............. 9

II.   THE SURVEILLANCE AND NO-FLY PROVISIONS ARE
      UNCONSTITUTIONALLY OVERBROAD .......................................................... 9

III.  THE SURVEILLANCE AND NO-FLY PROVISIONS ARE
      UNCONSTITUTIONALLY VAGUE .................................................................. 10

      A.    Defendants' Motion Highlights the Vagueness of the Word "Surveillance" ........ 12

      B.    The Vagueness of "Commercial Purpose" Cannot be Resolved With Links to
            FAA Webpages ...................................................................................... 12

IV.   THE COURT HAS JURISDICTION .................................................................. 13

      A.    Defendants Are Not Immune ................................................................... 13

      B.    Plaintiffs Have Standing ......................................................................... 15

            i.    *Plaintiffs have established injuries-in-fact* ...................................... 15

            ii    *Traceability* ................................................................................ 16

            iii.  *Redressability* ............................................................................. 17

CONCLUSION ........................................................................................................... 18

CERTIFICATE OF SERVICE ........................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*ACLU of Illinois v. Alvarez,*
  679 F.3d 583 (7th Cir. 2012) ......................................................................4

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,*
  564 U.S. 721 (2011) ...................................................................................6

*Ashcroft v. American Civil Liberties Union,*
  535 U.S. 564 (2002) ...................................................................................3

*Babbitt v. United Farm Workers National Union,*
  442 U.S. 289 (1979) .................................................................................15

*Brown v. Entertainment Merchants Association,*
  564 U.S. 786 (2011) ...............................................................................3, 6

*Buehrle v. City of Key West,*
  813 F.3d 973 (11th Cir. 2015) ...................................................................3

*Center for Inquiry v. Warren,*
  845 F. App'x 325 (5th Cir. 2021) ............................................................17

*Citizens United v. FEC,*
  558 U.S. 310 (2010) ...........................................................................3, 5, 6

*City of Austin v. Paxton,*
  943 F.3d 993, 1002 (5th Cir. 2019) ........................................................14

*Consolidated Edison Co. v. Public Service Commission,*
  447 U.S. 530 (1980) ...................................................................................7

*FCC v. Fox TV Stations, Inc.,*
  567 U.S. 239 (2012) .................................................................................11

*Griswold v. Connecticut,*
  381 U.S. 479 (1965) ...................................................................................3

*Larson v. Valente,*
  456 U.S. 228 (1982) .................................................................................17

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ...............................................................................5, 6

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ...........................................................................................15

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .......................................................................................5, 6

*Superior Films, Inc. v. Department of Education*,
    346 U.S. 587 (1954) ...........................................................................................4

*Texas Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) .....................................................................13, 14

*Turner v. Driver*,
    848 F.3d 678 (5th Cir. 2017) .........................................................................3, 4

*United States v. Miller*,
    982 F.3d 412 (6th Cir. 2020) .............................................................................4

*United States v. O'Brien*,
    391 U.S. 367, 376 (1968) ...................................................................................9

*United States v. Playboy Entertainment Group*,
    529 U.S. 803 (2000) ...........................................................................................3

*United States v. Stevens*,
    559 U.S. 460 (2010) ...............................................................................3, 10, 14

*United States v. Williams*,
    553 U.S. 285 (2008) ......................................................................................9, 10

*Utah v. Evans*,
    536 U.S. 452 (2002) .........................................................................................17

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) .........................................................................................10

*Women's Medical Center v. Bell*,
    248 F.3d 411 (5th Cir. 2001) .....................................................................11, 13

*Zimmerman v. City of Austin*,
    881 F.3d 378 (5th Cir. 2018) ...........................................................................15

**Regulations, Rules and Statutes**

14 C.F.R part 107 ..................................................................................................12

49 U.S.C. § 44809 .................................................................................................. 12

TEX. CODE CRIM. PROC. art. 2.12 ...................................................................... 13, 14

TEX. CODE CRIM. PROC. art. 2.13 ............................................................................ 13

TEX. CODE CRIM. PROC. art. 14.01 .......................................................................... 13

TEX. GOV'T CODE § 411.006 ............................................................................... 13, 14

TEX. GOV'T CODE § 423.002 ............................................................................... *passim*

TEX. GOV'T CODE § 423.003 ................................................................................... 5, 6

TEX. GOV'T CODE § 423.004 ................................................................................. 2, 10

TEX. GOV'T CODE § 423.045 ....................................................................... 6, 9, 10, 12

TEX. HEALTH & SAFETY ch. 481 ............................................................................... 7

TEX. PENAL CODE § 19.02 ........................................................................................ 7

TEX. PENAL CODE § 22.05 ........................................................................................ 7

TEX. PENAL CODE § 46.05 ........................................................................................ 7

## INTRODUCTION

Defendants' motion for summary judgment confirms that Chapter 423 is unconstitutional on its face. Their attempt to defend the law ignores key parts of Chapter 423 and overlooks well-established First Amendment precedent. When the complete statute is considered, and the omitted caselaw addressed, Defendants have no answer to the multiple ways in which Chapter 423 violates the First Amendment. Every piece of their defense side-steps important facts, legal principles, or both:

- Chapter 423 is subject to the First Amendment because it imposes restrictions on speech. To claim otherwise, Defendants ignore several of the law's provisions restricting speech as well as caselaw making clear that the First Amendment protects the creation of speech as well as speech itself.

- Chapter 423's restrictions on speech discriminate based on both the speaker and the content of speech, and therefore are subject to strict scrutiny. To claim otherwise, Defendants ignore various discriminatory provisions of the law.

- Chapter 423 fails strict scrutiny because it is neither actually necessary to protect any compelling governmental interests nor narrowly tailored to address interests asserted by the State. To claim otherwise, Defendants ignore Texas laws that make Chapter 432 redundant and the many ways Chapter 423 is ill-fitted for the job Defendants claim it is meant to do.

Defendants similarly fail to address the overbreadth caselaw under which Chapter 423 plainly violates the First Amendment, and they try to evade the law's impermissible vagueness by suggesting it adopts a cross-referenced definition that is not there. In short, their defense of Chapter 423 only highlights that the law violates the First Amendment.

Defendants equally fall short in advancing jurisdictional arguments about sovereign immunity and lack of standing premised on their professed unwillingness to enforce the law. Texas statutes and Supreme Court precedent leave no doubt that the *potential* for future enforcement and the fear of that enforcement establish the court's jurisdiction so long as Chapter 423 stays on the books.

As made clear in Plaintiffs' Motion for Summary Judgment,[1] ECF No. 63, Chapter 423 violates the First Amendment and should be struck down. Defendants' arguments do nothing to resurrect it.

## ARGUMENT

## I.   CHAPTER 423'S RESTRICTIONS ARE SUBJECT TO, AND FAIL, STRICT SCRUTINY

### A.  The Surveillance and No-Fly Provisions Restrict Speech and Expressive Conduct Protected by the First Amendment

Defendants rest much of their defense of Chapter 423 on the meritless claim that the Surveillance and No-Fly Provisions neither limit "expressive activity" nor implicate the First Amendment at all. *See* Defs.' Mot. at 15-20, 22-25. Both the text of Chapter 423 and well-settled First Amendment caselaw make clear this is not so: the provisions restrict speech and newsgathering, and therefore require First Amendment scrutiny.

The Surveillance Provisions contain direct restrictions on speech. Section 423.004 makes it a criminal offense to, among other things, "possess[], disclose[], display[ or] or distribute[]" an image taken with a drone that depicts private property.[2] TEX. GOV'T CODE § 423.004(c). Even Defendants are forced to acknowledge that Section 423.004 "purports to prohibit speech." Defs.' Mot. at 18 n.7. Such a restriction criminalizing the display or distribution of images is subject to First Amendment scrutiny because, fundamentally, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its

---

[1] Plaintiffs incorporate herein their Motion for Summary Judgment.

[2] Defendants mistakenly assert that Plaintiffs are not challenging the provisions of Chapter 423 that prohibit disclosure of images. Defs.' Mot. at 2 n.2. The provision regarding disclosure cited by Defendants, section 423.005, restricts the use of "illegally" captured images as evidence, and their disclosure under the Public Information Act or pursuant to subpoena, and thus is not directly relevant to newsgathering. Plaintiffs *do* challenge the broad disclosure and use prohibitions in section 423.004 and other restrictions relevant to newsgathering; these sections are challenged and specifically referenced in the Complaint. *See* Complaint ¶¶ 3, 9, 26-28, 95-96; *see also* Plaintiffs' Mot. at 6, 17, 38.

content." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. American Civil Liberties Union,* 535 U.S. 564, 573 (2002)); *see also Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) ("The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read."). Such restrictions are "presumptively invalid." *Stevens*, 559 U.S. at 468 (quoting *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 817 (2000)). Defendants' untenable claim that Chapter 423 does not implicate the First Amendment at all ignores, among other things, the specific provisions of Section 423.004 and controlling Supreme Court precedent.

Even beyond its criminal penalties for distributing speech, the Surveillance Provisions directly target speech. The statute imposes limits on when it is "lawful to capture an image," TEX. GOV'T CODE § 423.002(a), and requires law enforcement officers to scrutinize the content of those images to determine whether they are lawful. The Supreme Court and Fifth Circuit have made clear that First Amendment protections extend to "creating, distributing, [and] consuming speech." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 792 n.1 (2011); *Turner v. Driver*, 848 F.3d 678, 689 n.41 (5th Cir. 2017). Holding a camera to take a picture, or flying a drone to take a picture, is protected to the same extent as the picture itself.

Defendants simply ignore a long line of caselaw that rejects their argument that using a drone to take a photograph or record a video—an act that is restricted by both the Surveillance and No-Fly Provisions—lacks First Amendment protection. Without First Amendment protection for the act of creating an image, protection for the image itself would mean little; any government that wanted to restrict the content of images could do so just by putting limits on capturing images. As the Supreme Court has explained, "[l]aws enacted to control or suppress speech may operate at different points in the speech process." *Citizens United v. FEC*, 558 U.S. 310, 336 (2010). The

First Amendment's speech protections extend to the process for creating speech because a "regulation limiting the creation of [speech] curtails expression as effectively as a regulation limiting its display." *Buehrle v. City of Key W.*, 813 F.3d 973, 977 (11th Cir. 2015). And creating speech by recording images with drones is exactly what Plaintiffs wish to do. Pls.' Mot. for Summ. J., ECF No. 63 ("Pls.' Mot.") at 2-6, 8-12. As the Fifth Circuit has squarely held, "[t]he act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording." *Turner v. Driver*, 848 F.3d 678, 689 n.41 (5th Cir. 2017) (quoting *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012)).

The Surveillance and No-Fly Provisions also burden newsgathering, a right that is itself protected by the First Amendment. *See* Order on Motions to Dismiss, ECF No. 52, at 18 (quoting *ACLU of Ill.*, 679 F.3d at 595). As Plaintiffs establish in their motion for summary judgment, Chapter 423 places severe restrictions on journalists' use of drones to gather the news, hampering their ability to exercise their rights. Pls.' Mot. at 18-20. Budgetary and industry realities mean that some news can only be effectively reported using drones—no alternative is financially or practically possible. Pls.' Mot. at 2-6. Defendants are entirely off-base in arguing that restrictions in Chapter 423 do not implicate the First Amendment.

Defendants' last-ditch argument that "[u]nrestricted UAS surveillance could not have been within the Framers' thinking when devising the First Amendment," Defs.' Mot. at 16, is equally unavailing. Photography, radio, television, and the internet were not within the Framers' thinking either. But that has no bearing on whether they receive First Amendment protection because the "First Amendment draws no distinction between the various methods of communicating ideas." *Superior Films, Inc. v. Dep't of Educ.*, 346 U.S. 587, 589 (1954) (Douglas, J., concurring); *see*

4

*also United States v. Miller*, 982 F.3d 412, 417 (6th Cir. 2020) ("Courts often must apply the legal rules arising from fixed constitutional rights to new technologies in an evolving world. The First Amendment's rules for speech apply to debate on the internet.").

Chapter 423 plainly restricts activities protected by the First Amendment. Defendants' claim to the contrary is the underlying basis for many of their arguments—including that no strict scrutiny is warranted, Defs.' Mot. for Summ. J., ECF No. 65 ("Defs.' Mot.") at 17; that the law can pass intermediate scrutiny, *id.*; and that it is not overbroad, *id.* at 22-24. These claims all fail out of the gate.

### B. Strict Scrutiny Applies Because Chapter 423 Imposes Speaker- and Content-Based Discrimination

When a law imposes restrictions only on certain speakers or content, as Chapter 423 does, it is subject to strict scrutiny. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564-65 (2011). Such discriminatory restrictions "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). As established in Plaintiffs' motion for summary judgment, the Surveillance and No-Fly Provisions impose clear speaker- and content-based discrimination. Pls.' Mot. at 15-18. In arguing that strict scrutiny does not apply, Defendants simply ignore the discriminatory parts of the law.

The Surveillance Provisions impose speaker-based discrimination by favoring certain speakers—the "professor," "student," "professional engineer," or "employee of an insurance company"—who are exempted from the statute's restrictions, while other speakers, including journalists, are not. TEX. GOV'T CODE § 423.002(a); *see also Citizens United v. FEC*, 558 U.S. 310, 340 (2010) ("[T]he Government may commit a constitutional wrong when by law it identifies certain preferred speakers."). They discriminate on content by prohibiting the creation and use of

5

drone images that depict individuals or private real property, so that the only way to know if a particular image violates the statute is by examining its content. TEX. GOV'T CODE § 423.003(a); *see also Sorrell*, 564 U.S. at 564 (a law that disfavors "speech with a particular content" is content-based). The No-Fly Provisions discriminate on content by exempting commercial speech from their restrictions. TEX. GOV'T CODE § 423.0045(c). A statute is content-based if it "defin[es] regulated speech by its function or purpose." *Reed*, 576 U.S. at 163.

The Defendants have no answer for why these provisions are not speaker and content discrimination. They plainly are. *See* Pls.' Mot at 16-18. Defendants cherry-pick only a limited portion of the statute—and even then fail to make the case. Defendants claim the Surveillance Provisions are content-neutral because determining whether an image is legal "requires an inquiry into the speaker's intent, regardless of their identity," Defs.' Mot. at 19, but that simply is not true. If the speaker's identity falls into one of the exempted groups—a professor conducting academic research, for example—there is no inquiry into the speaker's intent. A journalist and a professor could each have the same "intent to conduct surveillance," and each take the same photograph using a drone in the same way, but the statute would only require inquiry into whether the *journalist* acted with intent to conduct surveillance. *See* TEX. GOV'T CODE § 423.003(a). That is the very definition of speaker discrimination. *Citizens United*, 558 U.S. at 340-41.

## C.  Chapter 423 Cannot Pass Strict Scrutiny

To survive strict scrutiny, a statute must be "actually necessary" to address a compelling government interest, *Brown*, 564 U.S. at 799 (2011), and "narrowly tailored to achieve that interest," *Reed*, 576 U.S. at 171 (2015) (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). Defendants make no attempt to explain how the specific provisions of Chapter 423 that criminalize the mere possession or publication of drone images are actually necessary or narrowly tailored to achieve a compelling government interest, and their

6

cursory effort to show that other sections of Chapter 423 satisfy strict scrutiny falls far short. The scant examples of harm Defendants cite are unrelated to the government interests they claim, and the statute is far from narrowly tailored to address those alleged interests.

### i. No compelling need

Defendants cite two interests they say are addressed by Chapter 423: "protecting privacy rights and the safety and security of persons and property," Defs.' Mot. at 19, but offer no explanation why the Surveillance or No-Fly Provisions are "actually necessary" to address those interests. The state's privacy and safety interests are already well addressed by a variety of other laws on the books, as Plaintiffs have demonstrated. Pls.' Mot. at 22. Defendants list a dramatic series of potential risks to public safety—equipping drones with "saws or flamethrowers" or "explosives," using them for "smuggling contraband," or attempting an "assassinat[ion]," Defs.' Mot. at 6—but these acts are also covered by existing statutes. *See, e.g.*, TEX. PENAL CODE §§ 19.02 (murder), 22.05 ("deadly conduct": "conduct that places another in imminent danger of serious bodily injury"), 46.05(a) (possession of, *inter alia*, "an explosive weapon" or "an improvised explosive device"); TEX. HEALTH & SAFETY ch. 481 (Texas Controlled Substances Act, criminalizing the possession and distribution of many kinds of substances). They were illegal long before Chapter 423 became law. The risks are also entirely speculative, and "[m]ere speculation of harm does not constitute a compelling state interest." *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 543 (1980). The state does not need Chapter 423 to address those concerns.

The fact that Chapter 423 is not actually necessary is starkly established by Defendants' admission that the Department of Public Safety (DPS) and Texas Highway Patrol (THP) have never found need to enforce Chapter 423:

> Neither DPS nor THP has made an arrest under Chapter 423. On the small handful of occasions where a DPS officer has had any interactions with drone pilots, . . . they have never issued a warning for any alleged violation of Chapter 423.

Defs.' Mot. at 11. In the five times they interacted with drone operators over the past six years, Defendants on each occasion found another statute or regulation sufficient to address the situation. Defs. Ex. L, ECF No. 65-12, Attachment 1 at 6-7 (McCraw Interrog. Answers). Defendant Mau's office has charged one person under the statute, in a case involving a dispute among neighbors, "and those charges were dismissed." Defs.' Mot. at 11. This lack of enforcement demonstrates that the statute is not necessary for addressing the concerns Defendants advance to justify it. In all the years when the Defendants were *not* warning or arresting people under Chapter 423, Texans still had their privacy and safety protected.

### ii.   No narrow tailoring

The statute is also not narrowly tailored. As Plaintiffs explain in their motion, the Surveillance and No-Fly Provisions are both overinclusive—they prohibit actions that could not harm the government's interests—and underinclusive, in that they fail to fully address the purported interests. Pls.' Mot. at 23-27. Defendants' motion offers even more examples of why the statute is underinclusive. They raise concerns about the need to properly maintain drones and train drone operators to promote public safety, Defs.' Mot. at 5, yet do not explain why these concerns do not apply equally to the groups exempted from the law. There is no reason to think that professors, students, and insurance agents, for example, maintain their drones properly while journalists do not. Maintenance and training requirements could have been included in Chapter 423—in fact, Plaintiffs already have their Part 107 Remote Pilot's Certificates and fly FAA-registered drones, Pls.' Mot. at 8, 10-11. But the Legislature chose not to impose such

requirements, leaving Chapter 423 even less able to address the government's claimed interest in safety.

### D.  Even Under Intermediate Scrutiny, the Provisions Are Unconstitutional

Even if intermediate scrutiny were to apply instead of strict scrutiny, the Surveillance and No-Fly Provisions could not pass muster. Intermediate scrutiny requires that the law "(1) furthers an important or substantial government interest that is (2) unrelated to the suppression of free expression and (3) narrowly tailored to advance that interest." Order on Motions to Dismiss at 23 (citing *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). For the reasons above and in Plaintiffs' brief, Chapter 423 fails on all three counts. *See* Pls.' Mot. at 27-28. It does not further the government's interests in privacy or safety, since many Texas laws already exist to do the work that Defendants claim Chapter 423 is intended to do, *supra* § I.C.i, it includes numerous exemptions, TEX. GOV'T CODE §§ 423.002(a), 423.0045(c), and Defendants have not actually used Chapter 423 to arrest or warn (in the case of Mathis and McCraw) or prosecute (in the case of Mau) anyone, *supra* § I.C.i. The government's interests are not "unrelated to the suppression of free expression," since the privacy interest is advanced by Chapter 423 only by restricting the creation and sharing of images. And the statute is not narrowly tailored to achieve the government's interests. It is both overinclusive, as many of its restrictions do not advance the government's interests in privacy or safety, and underinclusive, as its exceptions provide ample opportunity for people to cause the purported harms the government claims it fears. Pls.' Mot. at 23-27. It cannot pass intermediate scrutiny.

## II.    THE SURVEILLANCE AND NO-FLY PROVISIONS ARE UNCONSTITUTIONALLY OVERBROAD

In First Amendment cases, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008); *see* Pls.' Mot. at 25.

First Amendment overbreadth doctrine requires a different analysis than traditional overbreadth rules—another legal principle that the Defendants fail to recognize. As demonstrated in Plaintiffs' motion, Chapter 423 is clearly overbroad under the First Amendment doctrine, as it restricts constitutionally protected speech and newsgathering. *See* Pls.' Mot. at 2-6, 8-12.

Moreover, the law prohibits anyone who does not enjoy an exemption from recording, possessing, or distributing disfavored images, TEX. GOV'T CODE § 423.002, 423.004(c), and from recording any images at all at certain sites if their speech is not "commercial," TEX. GOV'T CODE § 423.0045(c). The statute prohibits a substantial amount of speech—far more than any that might possibly be justified by the government's stated interests—and it is causing journalists and news organizations to avoid taking or publishing drone images for fear of violating the law. *See* Pls.' Mot. at 8. The declarations attached to Plaintiffs' motion cite a variety of specific stories that Chapter 423 has prevented from being fully reported. *See* Pappalardo Decl., Pls.' Ex. 5, ¶ 14; Wade Decl., Pls.' Ex. 7, ¶¶ 14-17, 22-26. That is a far cry from the isolated, hypothetical restrictions on speech that courts found insufficient to support an overbreadth holdings in the decisions Defendants cite. *See United States v. Williams*, 553 U.S. 285, 303 (2008) (hypothetical footage of atrocities committed in war was not enough to invalidate a child pornography law).

Chapter 423 should be invalidated as overbroad because "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

## III.  THE SURVEILLANCE AND NO-FLY PROVISIONS ARE UNCONSTITUTIONALLY VAGUE

Defendants attempt to clarify Chapter 423's ambiguous terminology, but their circular reasoning and explanations divorced from the text are entirely unavailing. Their motion only

serves to reinforce the vagueness of Chapter 423's "surveillance" and "commercial purposes" terms and makes clear that the law "fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited." *Women's Med. Ctr. v. Bell*, 248 F.3d 411, 421 (5th Cir. 2001).

Defendants claim the vagueness of "surveillance" is ameliorated by the intent element of the Surveillance Provisions, contending that requiring an *intent* to conduct surveillance somehow clarifies what *surveillance* means. Defs.' Mot. at 22. The argument is entirely circular. Knowing that intent to surveil is required does not help provide "fair notice" of what "surveillance" entails. *See FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012).

The dictionary definitions that Defendants selectively highlight offer no help, either. They all define surveillance in the context of a criminal investigation or law enforcement activities. *See* Defs.' Mot. at 21 (defining "surveillance" as "the careful watching of a person or place, especially by the police or army, because of a crime that has happened or is expected" or "the process of carefully watching a person or place that may be involved in a criminal activity"). Apart from the fact that journalists sometimes investigate crimes and so newsgathering could still fall under these definitions, a law that only prohibits the use of drones to conduct criminal investigations makes no sense when viewed alongside the state's asserted interests in privacy and safety, and in light of Chapter 423's explicit exemption allowing the use of drones by law enforcement. Tex. Gov't Code § 423.002(8). In any event, Defendants' definitions do not account for the variety of other definitions Plaintiffs cited that demonstrate the word's vagueness and the ambiguity over whether it applies to journalists. *See* Pls.' Mot. at 30-31.

Through all their arguments, Defendants still fail to take a position on whether the use of drones for newsgathering constitutes prohibited "surveillance" or is for a permitted "commercial

11

purpose"—amply illustrating that both the term "surveillance" in the Surveillance Provision and the term "commercial purpose" in the No-Fly Provision are unconstitutionally vague.

### A. Defendants' Motion Highlights the Vagueness of the Word "Surveillance"

Defendants' motion only underscores the vagueness of "surveillance" when it repeatedly deems it necessary to add modifiers to clarify its meaning—as in, "hostile surveillance" or "intentional, targeted surveillance." Defs.' Mot. at 21, 23. In other places, Defendants replace the word entirely with a more detailed description: "when someone flies a drone for the purpose of surreptitious information gathering," Defs.' Mot. at 17, or "surreptitious drone imaging," Defs.' Mot. at 21. But those modifiers are found nowhere in the text of Chapter 423; no one reading the law to try to find out what drone uses it prohibits would discover the State's modified descriptions. Even for Defendants, the word "surveillance" standing by itself does not clearly convey a specific meaning. Defendants' elaborations and rewordings fail to make the statute any less vague.

### B. The Vagueness of "Commercial Purpose" Cannot Be Resolved With Links to FAA Webpages

In defending the No-Fly Provisions, Defendants' attempt to clarify the meaning of "commercial purpose," *see* TEX. GOV'T CODE § 423.0045(c)(5), also fails. They offer a non-existent definitional cross-reference: because the No-Fly Provisions require drone operators to comply with "each applicable Federal Aviation Administration rule, restriction, or exemption," they argue that someone who wants to know the meaning of "commercial purpose" should look to "the relevant FAA regulations." Defs.' Mot. at 25-26. But the text of Chapter 423 gives no hint that it is adopting definitions set out in FAA regulations. Moreover, the regulations Defendants cite *do not define* "commercial." *See* 14 C.F.R part 107. They do not even use the word. The statute Defendants cite also does not include the word "commercial." *See* 49 U.S.C. § 44809. Defendants do not cite any regulation or statute that defines "commercial." The most they can muster is a link

to a webpage—which, needless to say, is not referenced in the text of Chapter 423—that defines "*recreational* flyers." Defs.' Mot. at 26 ("'Recreational Flyers & Modeler Community-Based Organizations,' FAA, https://www.faa.gov/uas/recreational_fliers/"). Defendants claim that anything that is not recreational must be commercial.

But no one reading Chapter 423 would have fair warning that the definition of "commercial purpose" is supposed to be the *opposite* of a term used on an FAA webpage concerning an FAA regulation that is not even directly cited by the statute. Defendants provide no other possible definition, no argument that people simply reading the statute would have "a reasonable opportunity to know what conduct is prohibited." *Women's Med. Ctr.*, 248 F.3d at 421.

## IV.    THE COURT HAS JURISDICTION

### A.  Defendants Are Not Immune

Defendants claim sovereign immunity shields them from this suit because the *Ex Parte Young* exception to sovereign immunity for state officials is inapposite. They argue that *Ex Parte Young* requires state officials to "have some connection to the state law's enforcement" and remarkably contend that they—Chief of Texas Highway Patrol, Director of Texas Department of Public Safety, and Hays County Criminal District Attorney—have no such connection. Defs.' Mot. at 10. In fact, Defendants have both the duty and willingness to enforce Chapter 423 that *Ex Parte Young* requires. *See Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020). They are clearly open to suit.

As an initial matter, Defendants do not contest that they have the *duty* to enforce Texas law, including Chapter 423. Defs.' Mot. at 10. Indeed, they could not seriously claim otherwise. In Texas, peace officers have both the power and the duty to arrest anyone who commits a crime in front of them, including those who commit misdemeanors. TEX. CODE CRIM. PROC. arts. 2.13, 14.01. Defendant Mathis, the Chief of Texas Highway Patrol, is a peace officer, *see* TEX. CODE

CRIM. PROC. art. 2.12(4); TEX. GOV'T CODE § 411.006(a)(5), and thus clearly has the power and duty to enforce Chapter 423. Defendant McCraw, the Director of the Department of Public Safety, supervises the department's thousands of peace officers.[3] He is "directly responsible . . . for the conduct of the department's affairs." TEX. GOV'T CODE § 411.006(a)(1). Thus, the Director is also charged with ensuring enforcement of state laws, including Chapter 423. Defendant Mau admits he has "prosecution authority." Defs.' Mot. at 12.

Defendants appear to limit their sovereign immunity argument to whether they have the required *willingness* to enforce the statute, pointing to their general lack of enforcement. Yet they acknowledge that Mau's office has charged a defendant with violating Chapter 423. Defs.' Mot. at 11. That by itself is enough. *Texas Democratic Party*, 978 F.3d at 179 ("A 'scintilla of enforcement by the relevant state official with respect to the challenged law' will do." (quoting *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019))).

Even if none of them had enforced it before, Defendants make no assurance that they will not in the future. If they really were unwilling to enforce Chapter 423, they could have offered to enter into a non-enforcement consent decree; they have not. Until the statute is off the books or unenforceable, journalists remain at the mercy of Defendants' largesse. This retains precisely the kind of Sword of Damocles that the First Amendment protects against and that leads to the harms Plaintiffs suffer. "[T]he First Amendment protects against the Government; it does not leave us at the mercy of noblesse oblige. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010). Defendants are amenable to suit.

---

[3] "[R]angers, officers, and members of the reserve officer corps commissioned by the Public Safety Commission and the Director of the Department of Public Safety" are all peace officers. TEX. CODE CRIM. PROC. art. 2.12(4).

### B. Plaintiffs Have Standing

Plaintiffs establish all three elements of standing: injury in fact, traceability, and redressability. As Plaintiffs demonstrated in their motion, the allegations this Court found sufficient to establish standing at the motion to dismiss stage, Order at 15, are now fully supported by undisputed record facts, Pls.' Mot. at 34-38. Defendants do not dispute those facts.

#### i. Plaintiffs have established injuries-in-fact

NPPA has plainly established injury in fact, Pls.' Mot. at 35-37, and Defendants do not seek summary judgment as to NPPA's injury at all, Defs.' Mot. at 14 n.5. Defendants claim only that the other Plaintiffs lack injury, but Defendants' argument simply ignores the extensive caselaw establishing that fear of prosecution and the resulting chilling effect sufficiently establish the requisite injury-in-fact requirement in First Amendment cases. *See, e.g.*, *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (a plaintiff who intends to engage in conduct "arguably affected with a constitutional interest, but proscribed by a statute," should not "be required to await and undergo a criminal prosecution as the sole means of seeking relief."); *Zimmerman v. City of Austin*, 881 F.3d 378, 388 (5th Cir. 2018). Moreover, only one Plaintiff needs to have standing "to satisfy Article III's case-or-controversy requirement." Order at 12 n.4 (quoting *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)).

Plaintiff Pappalardo stopped using his drone for newsgathering in Texas altogether "for fear of facing criminal or civil liability." Pappalardo Decl., Pls.' Ex. 5, ¶¶ 10, 16. If not for Chapter 423, Pappalardo would have used his drone to report on several newsworthy stories, including panic at the gas pumps in the aftermath of Hurricane Harvey, house fires, construction projects, and urban sprawl. Pappalardo Decl., Pls.' Ex. 5, ¶ 14. And but for Chapter 423, he would use his drone for future reporting, including stories about illegal poaching in urban areas and gridlock

15

hampering first responders. Pappalardo Decl., Pls.' Ex. 5, ¶ 15. The statute has chilled him from exercising his First Amendment right to gather and report the news, and it continues to do so.

Similarly, Plaintiff TPA's member newspapers have suffered harm caused by Chapter 423 by, among other things, being forced to adopt a policy against drone use by staff or freelance photographers on assignment, and avoiding publishing photos captured by a drone for fear of violating the law. Wade Decl., Pls.' Ex. 7, ¶¶ 14-17.

Thus, the harms suffered by Pappalardo, as well as TPA and NPPA[4] members, sufficiently establish the injury-in-fact requirement necessary for standing.

### ii. Traceability

Defendants incorrectly claim that no Plaintiff can satisfy the traceability requirement. The injuries suffered by Plaintiffs are directly traceable to Defendants, who are charged with enforcing Texas laws, including Chapter 423. Plaintiffs' injuries stem largely from the fear of future enforcement—a fear that has motivated them to self-censor by refraining from using drones for newsgathering or publishing photos taken by drones.

All three defendants have both the power and duty to enforce state law, including Chapter 423. *See supra* § IV.A. They offer no guarantees that they will not enforce Chapter 423 in the future. That possibility is exactly what is causing Plaintiffs' harms. Thus, those harms are traceable to the Defendants.

---

[4] Although Defendants do not challenge its injury here, NPPA has also established its injury-in-fact because its members have injuries-in-fact. NPPA member Brandon Wade self-censored his drone photography out of fear of liability under Chapter 423. Wade Decl., Pls.' Ex. 7, ¶ 31. Similarly, NPPA member Guillermo Calzada's newsgathering activities have been chilled because he was approached by San Marcos police in 2018 when he was told he was violating state law for his use of a drone. Calzada Decl., Pls.' Ex. 4, ¶¶ 8-13. As a result of the ambiguity of Chapter 423, he has limited his use of drones to gather the news. Calzada Decl., Pls.' Ex. 4, ¶ 24.

> ### iii.   Redressability

Finally, Plaintiffs have satisfied the redressability requirement for standing. While Defendants argue that granting Plaintiffs relief will not fully redress Plaintiffs' harms, full redressability is not required. *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury."). Granting Plaintiffs' requested relief against the Defendants will, at minimum, permit Plaintiffs to gather the news using drones in Defendants' jurisdictions without fear of arrest or prosecution by Defendants, relieving many of their First Amendment injuries in those locations.

Furthermore, contrary to Defendants' assertions, issuing a declaratory judgment in this case *will* address Plaintiffs' injuries in a concrete way. Since their injuries stem from their fear of prosecution, a declaratory judgment will have the practical effect of assuring them of their rights, and if another jurisdiction were to try to prosecute them for violating Chapter 423, they could point to the judgment as important support for their case. This is enough to establish redressability. *Utah v. Evans*, 536 U.S. 452, 464 (2002) (finding redressability where "the practical consequence of [the declaratory judgment] would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered").

Defendants' argument against redressability relies on *Center for Inquiry v. Warren*, 845 F. App'x 325, 328 (5th Cir. 2021), an unpublished decision that is distinguishable from the facts here. In that case, the plaintiffs sought to compel a county clerk to record marriages conducted by secular celebrants. The Court held that the plaintiffs lacked redressability because even if they obtained relief, they would still be committing a crime under a separate statute that criminalized conducting such marriages. Conversely, in the present case, there is no separate statute. If Plaintiffs obtain the

relief requested, their harm will be redressed, at least within the Defendants' jurisdictions. Plaintiffs therefore meet the redressability prong and have established standing.

## CONCLUSION

For these reasons, and the reasons given in Plaintiffs' motion for summary judgment, Defendants' motion should be denied.

Dated: August 9, 2021

Respectfully submitted,

By: /s/ James A. Hemphill
James A. Hemphill
Texas State Bar No. 00787674
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Ave., Suite 2700
Austin, Texas 78701
Tel: (512) 480-5762
Fax: (512) 536-9907
jhemphill@gdhm.com

Leah M. Nicholls (*pro hac vice*)
DC Bar No. 982730
Public Justice P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
Tel: (202) 797-8600
lnicholls@publicjustice.net

David A. Schulz (*pro hac vice*)
NY State Bar No. 1514751
Media Freedom and Information
        Access Clinic
Yale Law School
127 Wall Street
New Haven, CT 06511
Tel: (212) 850-6103
Fax: (212) 223-1942
david.schulz@yale.edu

Mickey H. Osterreicher (*pro hac vice*)
New York State Bar No. 2938678
General Counsel
National Press Photographers
        Association

Finnerty Osterreicher & Abdulla
70 Niagara Street
Buffalo, NY 14202
Tel: (716) 983-7800
Fax: (716) 608-1509
lawyer@nppa.org

Alicia Wagner Calzada
Texas State Bar No. 24076296
Deputy General Counsel
National Press Photographers
        Association
Alicia Wagner Calzada, PLLC
12023 Radium, Suite B1
San Antonio, TX 78216
Tel: (210) 825-1449
Alicia@calzadalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of August, 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record,

/s/ *James A. Hemphill*
James A. Hemphill

19